**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IZQ CONSTRUCTION LLC, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>ACEROS DE AMERICA, INC.; CAROLINA BUILDING MATERIALS, INC.; CAROLINA BUILDING LLC; STEEL SERVICES & SUPPLIES, INC.; THYSSENKRUPP MATERIALS TRADING GMBH a/k/a THYSSENKRUPP MANNEX GMBH; THYSSENKRUPP MATERIALS N.A., INC.; THYSSENKRUPP AG; JUAN C. APONTE-TOLENTINO; EDGARDO SOLA-COLON; FRANCIS GARCIA-HAGHVERDIAN; NORBERT GOERTZ; RALF GENDRUSCHKE; CO-CONSPIRATORS A through Z;<br><br>Defendants. | **CASE NO. 3:24-cv-1492**<br><br>**JURY TRIAL DEMANDED** |

**<u>CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

NATURE OF THE CASE ................................................................................................ 1

INTRODUCTION ........................................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 3

PARTIES ......................................................................................................................... 4

FACTUAL ALLEGATIONS .......................................................................................... 8

    Defendants' Network ................................................................................................. 8

    The Conspiracy – La Cosa Nostra Chat .................................................................. 11

    Criminal Investigations & Proceedings .................................................................. 16

ANTITRUST INJURY .................................................................................................. 17

CLASS ACTION ALLEGATIONS .............................................................................. 17

CLAIMS FOR RELIEF ................................................................................................ 20

    COUNT I .................................................................................................................. 20

    COUNT II ................................................................................................................. 21

    COUNT III ............................................................................................................... 22

PRAYER FOR RELIEF ................................................................................................ 23

DEMAND FOR JURY TRIAL ..................................................................................... 25

## NATURE OF THE CASE

Plaintiff, IZQ Construction LLC ("IZQ" or "Plaintiff"), individually and on behalf of the Class, defined below, bring this Class Action Complaint against Defendants Aceros de America, Inc., Carolina Building Materials, Inc., Carolina Building LLC, Steel Services & Supplies, Inc., ThyssenKrupp AG, ThyssenKrupp Mannex GmbH a/k/a ThyssenKrupp Materials Trading GmbH, ThyssenKrupp Materiarls N.A., Inc. (collectively "ThyssenKrupp"), Juan C. Aponte-Tolentino, Edgardo Sola-Colon, Francis Garcia-Haghverdian, Norbert Goertz, Ralf Gendruschke, and Co-Conspirators A through Z (collectively "Defendants"), for engaging in an illegal horizontal scheme to fix prices of Rebar in violation of the Sherman Act and the Puerto Rico Antimonopoly Act of 1964. Plaintiff seeks damages, and other relief pursuant to the federal Sherman Act and the Puerto Rico state antitrust law. Plaintiff alleges the following based upon information and belief, except as to those allegations that are based on Plaintiff's personal knowledge or matters of public record.

## INTRODUCTION

1.    This antitrust class action concerns the illegal and anticompetitive practices of Defendants to engage in a long-running, illegal, horizontal conspiracy to restrain trade and fix, raise, maintain, and stabilize prices in the market for steel products, including steel reinforcing bar ("Rebar") causing inflated prices for Rebar to Plaintiff and the Class and harming competition in the market for Rebar in Puerto Rico and elsewhere.

2.    Rebar is widely used in the construction of homes and buildings. Rebar provides strength and stability to concrete structures and prevents cracking, sagging, or collapsing of the concrete. Rebar is critical to help fortify structures made of concrete or concrete block, enabling the structures to withstand tension from bending or swaying.

3.      Due to the frequent risk of hurricanes, and the winds and rain that are part of such storms, many commercial buildings and residential homes in Puerto Rico are made of concrete or concrete block reinforced by Rebar.

4.      A large portion of US imports for Rebar come from just a few countries including: Turkey, Spain, Mexico, and the Dominican Republic.[1] Puerto Rico is a large importer of Rebar from these countries. Indeed, in September 2020, San Juan, Puerto Rico was the second largest importer district for Rebar in the United States with more than 11,300 tons of Rebar imported that month.[2]

5.      Rebar is routinely sold at the wholesale level by the quintal. A quintal is 100kgs or approximately 220lbs. From 2015 to 2022, the price of Rebar more than doubled as a result of Defendants' price-fixing conspiracy increasing from $25.50 per quintal to $54.00 per quintal.

6.      Plaintiff, a Puerto Rico-based construction company, specializes in residential and commercial development projects. Since its inception, IZQ has served private clients and public entities, including state and federal agencies such as the Puerto Rico Highways and Transportation Authority and the U.S. Department of Veterans Affairs. IZQ's portfolio spans affordable housing developments for elderly residents, hurricane recovery projects, commercial and industrial facilities, and high-end residential properties. Noteworthy projects include the 70,000-square-foot FedEx facility at Luis Muñoz Marín International Airport in Carolina, the Morovis National Cemetery, the Peninsula residential tower in Condado, and luxury residences

---

[1] Gerdau, US Rebar Final Imports Report, available at: https://www2.gerdau.com/market-update/us-rebar-final-imports-5#:~:text=Figure%203%20charts%20the%20largest,receiving%20port%20with%205%2C530%20tons. (last accessed October 11, 2024)

[2] *Id*.

in Dorado Beach East and Bahia Beach, among others.

7.      Defendants Aceros, CBM, CB, and SSS are Puerto Rico-based, wholesale and retail steel distributors. Collectively these Defendants control over 70% of the Rebar market in Puerto Rico.[3]

8.      Over an eight-year period, from 2015 through 2022, including critical reconstruction periods in Puerto Rico following Hurricanes Irma and Maria in 2017, Defendants explicitly conspired to fix, raise, maintain, and stabilize prices Rebar, that were sold to hardware stores, contractors, construction companies, and others in Puerto Rico and elsewhere. Defendants also artificially reduced output of Rebar by creating shortages and coordinating reduced shipments of Rebar to Puerto Rico, creating cover for price increases. This maximized Defendants' profits at the expense of Puerto Rican purchasers of Rebar.

9.      Defendants' conduct artificially inflated the price of Rebar, restricted competition, and harmed consumers.

<u>**JURISDICTION AND VENUE**</u>

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, because these claims are brought pursuant to, in part, Sections 4 of the Clayton Act, 15 U.S.C. §§ 15 for violations of Section 1 of the Sherman Act, 15 U.S.C. §§ 1.  The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state cause of action set forth herein, including violations of Puerto Rico law. Exercising supplemental jurisdiction over Plaintiff's state law claims will avoid unnecessary duplication and multiplicity of actions and,

---

[3] DOJ Press Release, FORMER INTERIM PRESIDENT OF PUERTO RICAN STEEL DISTRIBUTOR PLEADS GUILTY TO EIGHT-YEAR PRICE-FIXING CONSPIRACY, *Office of Public Affairs*, August 7, 2024, available at:   https://www.justice.gov/opa/pr/former-interim-president-puerto-rican-steel-distributor-pleads-guilty-eight-year-price.

therefore, promote judicial economy, fairness, and convenience.

11.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(d), in that: (1) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Class are citizens of a state different from some Defendants, and/or some members of the class are citizens of a state and any defendant is a citizen of a foreign state.

12.    Venue is proper in the District of Puerto Rico pursuant 28 U.S.C. § 1391, because Defendants reside and transact business in this District, and a substantial part of the events giving rise to the claims occurred in this District including that the anticompetitive scheme of Defendants was orchestrated in this District and caused injury to persons residing in this District.

## **PARTIES**

13.    Plaintiff, IZQ Construction LLC, is a Puerto Rican based limited liability company dedicated to the business of residential and commercial construction. Plaintiff purchased Rebar on several occasions, from several of the Defendants, during the period of the alleged conspiracy and was injured by the inflated prices caused by Defendants' illegal activities. For example, Plaintiff received and paid an invoice for Rebar purchased from Defendant, Steel Services & Supplies, Inc., on November 17, 2021.

14.    Defendant Aceros de America, Inc. ("Aceros") is a Puerto Rican for-profit corporation with its principal place of business at Road #1, KM 25.0, San Juan, PR, 00726. Aceros is engaged in "the retail and wholesale distribution of construction and hardware supplies in Puerto Rico and also exports its merchandise to other Caribbean islands."[4] Aceros is 50% owned by

---

[4] Aceros de America, Inc., 2023 Annual Report, Financial Statement, June 6, 2024, available at:

ThyssenKrupp AG.[5]

15.    Defendant Juan C. Aponte-Tolentino ("Aponte"), a resident of Puerto Rico, was at all relevant times Vice-President and Interim President of Aceros[6] who conspired and colluded with the Defendants to fix, raise, maintain, and stabilize prices for Rebar, as well as allocate market and customers, in Puerto Rico and elsewhere.

16.    Defendant Carolina Building Materials, Inc. ("CBM") is a Puerto Rican for-profit corporation with its principal place of business at Road 860, Km 1, Bo Martin Gonzalez, Carolina, Puerto Rico, 00984. CBM is in the business of the "retail sale of construction materials and related accessories" including Rebar in Puerto Rico.[7] CBM at all relevant times was a wholly-owned subsidiary of Defendant, ThyssenKrupp Materials Trading GmbH.[8]

17.    Defendant Carolina Building LLC ("CB") is a Puerto Rican limited liability company with its principal place of business in Rd. 860 Km 1, Bo Martin Gonzalez, Carolina, Puerto Rico,

---

https://rcp.estado.pr.gov/en/entity-information?c=146834-111

[5]List of the Thyssenkrupp Group's Subsidiaries and Equity Interests as of September 30, 2019, available at:                                    See https://ucpcdn.thyssenkrupp.com/_legacy/UCPthyssenkruppAG/assets.files/media/investoren/berichtersta ttung-publikationen/update-21.11.2019/en/anteilsbesitzliste-%C2%A7-313-hgb-tk_konzern-engl.pdf

[6]    See    Aceros    de    America,    Inc.,    2015-2019    Annual    Reports,    available    at: https://rcp.estado.pr.gov/en/entity-information?c=146834-111

[7] Carolina Building Materials, Inc., 2021 Annual Report, Financial Statement, May 17, 2022, available at: https://rcp.estado.pr.gov/en/entity-information?c=108777-111

[8] *Id.*; *see also* List of the Thyssenkrupp Group's Subsidiaries and Equity Interests as of September 30, 2015,                                    available                                    at: https://ucpcdn.thyssenkrupp.com/_legacy/UCPthyssenkruppAG/assets.files/media/investoren/berichtersta ttung-publikationen/archiv/finanzberichte-en/2014-2015/thyssenkrupp_2014_2015_gb_konzern_anteilsbesitzliste_hgb313_en.pdf; List of the Thyssenkrupp Group's Subsidiaries and Equity Interests as of September 30, 2021, available at: https://ucpcdn.thyssenkrupp.com/_binary/UCPthyssenkruppAG/af91cd9b-afe1-4e96-92d0-4df50bb85e9e/D01-Anteilsbesitzliste-Konzern----313-HGB-_final-en.pdf.

00984. CB is in the business of importation, distribution and sale of Rebar used in construction in Puerto Rico.

18.    Defendant Edgardo Sola-Colon ("Sola-Colon"), a resident of Puerto Rico, was the president of CBM at all relevant times.[9] Sola-Colon was president and partial owner CB during the relevant period. Sola-Colon conspired and colluded with other Defendants to fix, raise, maintain, and stabilize prices for Rebar, as well as allocate market and customers, in Puerto Rico and elsewhere.

19.    Defendant Steel Services & Supplies, Inc. ("SSS") is a Puerto Rican for-profit corporation with its principal place of business at 109 Road 865, Campanilla, Toa Baja, Puerto Rico, 00949.  SSS is "principally engaged in the import, fabrication and wholesale of steel rebars, structural steel, ornamental iron products and related metal products as well as construction materials and contractors' equipment and supplies."[10]

20.    Defendant Francis Garcia-Haghverdian ("Garcia") is the current President of SSS.[11] Garcia served as Treasurer of SSS in 2021, becoming President of SSS in 2022.[12] Garcia conspired and colluded with Defendants to fix, raise, maintain, and stabilize prices for Rebar, as well as allocate market and customers, in Puerto Rico and elsewhere.

21.    Defendant ThyssenKrupp AG is a multinational conglomerate headquartered in Essen,

---

[9]    Carolina Building Materials, Inc., 2015-2020 Annual Reports, available at: https://rcp.estado.pr.gov/en/entity-information?c=108777-111

[10] Steel Services & Supplies, Inc., 2023 Annual Report, Financial Statement, May 14, 2024, available at: https://rcp.estado.pr.gov/en/entity-information?c=67043-111

[11] Francisco García-Alonso, as President and owner of SSS, participated in the price-fixing scheme with the other Defendants. However, after his death on July 11, 2022, his son, Garcia, took over as an active member of the conspiracy with Aceros and CBM.

[12]    Steel Services & Supplies, Inc., 2021-2023 Annual Reports, available at: https://rcp.estado.pr.gov/en/entity-information?c=67043-111

Germany. ThyssenKrupp AG is one of the world's largest steel producers generating an annual revenue of around $40 billion, with extensive operations across 48 countries, and employing around 100,000 people worldwide in industrial engineering, materials trading, and steel production.[13] ThyssenKrupp AG controls a vast network of subsidiaries and affiliates across the globe, including its wholly-owned subsidiary Defendant ThyssenKrupp Materials Trading GmbH and its 50% ownership in Aceros.

22.    Defendant ThyssenKrupp Materials Trading GmbH is a wholly-owned subsidiary of ThyssenKrupp AG, and itself is engaged in the sale of steel products and other industrial materials. ThyssenKrupp Materials Trading GmbH also wholly owns, as a subsidiary, Defendant CBM. Through its ownership and control of CBM, and CBM's illegal collusion with Aceros and SSS, ThyssenKrupp Materials Trading GmbH exercised a dominant position in the market for Rebar in Puerto Rico and elsewhere.

23.    Defendant ThyssenKrupp Materials N.A., Inc. a/k/a and d/b/a ThyssenKrupp Materials North America is the North American division of ThyssenKrupp AG focused on providing construction and manufacturing products across various industries. ThyssenKrupp Materials N.A., Inc. provides a wide array of products including Rebar.

24.    Defendant Norbert Goertz ("Goertz") is an individual residing in Michigan and is the CEO of ThyssenKrupp Materials N.A., Inc.[14] Goertz is also a director of Defendant Aceros[15] and a

---

[13] ThyssenKrupp Website, About Us, available at: https://www.thyssenkrupp.com/en/company (last accessed Oct. 10, 2024)

[14] ThyssenKrupp Materials N.A. Website, Our Leadership, available at: https://www.thyssenkrupp-materials-na.com/company/tkmna-leadership/norbert-goertz (last accessed October 10, 2024)

[15] Aceros de America, Inc., 2023 Annual Report, June 6, 2024, available at: https://rcp.estado.pr.gov/en/entity-information?c=146834-111

director at Defendant CBM.[16] Goertz also conspired and colluded with Defendants to fix, raise, maintain, and stabilize prices for Rebar, as well as allocate market and customers, in Puerto Rico and elsewhere.

25.    Defendant Ralf Gendruschke ("Gendruschke"), is an individual residing in Michigan and the Vice President of Controlling at ThyssenKrupp Materials N.A., Inc. Gendruschke is also a director of Defendant Aceros[17] and a director at Defendant CBM.[18] Gendruschke conspired and colluded with Defendants to fix, raise, maintain, and stabilize prices for Rebar, as well as allocate market and customers, in Puerto Rico and elsewhere.

## FACTUAL ALLEGATIONS

### Defendants' Network

26.    Through an intertwined network of companies, subsidiaries, executives, and directors Defendants were able to coordinate a horizontal price-fixing conspiracy among would-be competitors to dominate the Rebar market in Puerto Rico, reduce supply, and inflate prices for Rebar to supracompetitive levels.

---

[16] *See* Carolina Building Materials, Inc., Corporate Resolution, May 18, 2022, available at: https://rcp.estado.pr.gov/en/entity-information?c=108777-111

[17] Aceros de America, Inc., 2023 Annual Report, June 6, 2024, available at: https://rcp.estado.pr.gov/en/entity-information?c=146834-111

[18] *See* Carolina Building Materials, Inc., Corporate Resolution, May 18, 2022, available at: https://rcp.estado.pr.gov/en/entity-information?c=108777-111



27.    Aceros is 50% owned by ThyssenKrupp AG. Aponte, at all relevant times was the Vice-President and Interim President of Aceros. Goertz and Gendruschke were directors at Aceros.

28.    CBM is 100% owned by ThyssenKrupp Materials Trading GmbH. At all relevant times Sola-Colon was the President of CBM and CB. Goertz and Gendruschke were directors at CBM.

29.    ThyssenKrupp Materials Trading GmbH and ThyssenKrupp Materials N.A., Inc. both employ Goertz and Gendruschke as executives. ThyssenKrupp Materials Trading GmbH and ThyssenKrupp Materials N.A., Inc. are also both subsidiaries of ThyssenKrupp AG.

30.     Collectively, the ThyssenKrupp Defendants are dominant players in the global steel market and used this power to enforce and sustain the price-fixing conspiracy across their Puerto Rican subsidiaries.

31.     The ThyssenKrupp Defendants have unparalleled access to resources, technology, and global distribution networks, enabling them to control the Puerto Rican market.

32.     From 2015 to 2022, ThyssenKrupp directed and enforced the price-fixing agreements through Aceros and CBM who conspired with SSS to fix prices for Rebar in Puerto Rico and elsewhere.

33.     The ThyssenKrupp Defendants' market power and influence allowed them to manipulate the availability of Rebar in Puerto Rico. For example, in 2021, ThyssenKrupp orchestrated a reduction in steel shipments to Puerto Rico, creating an artificial scarcity that justified further price increases.

34.     ThyssenKrupp has the capacity to control a significant portion of the global steel supply. This has allowed ThyssenKrupp to exercise substantial control over regional markets, including Puerto Rico, where it has imposed anti-competitive practices that have harmed the local economy and consumers.

35.     Thyssenkrupp has a history of using its dominance as one of the top steel producers in the world and, through its subsidiaries, engaging in anticompetitive practices.[19]

---

[19] ThyssenKrupp has been investigated by the European Commission multiple times for its anticompetitive practices. For example, in 2007, the European Commission fined ThyssenKrupp over €479 million for price-fixing in the elevator and escalator market. *See* Press Release, European Commission, *Commission fines members of lifts and escalators cartels over €990 million,* available at https://ec.europa.eu/commission/presscorner/detail/en/ip_07_209. More recently, in 2019, the European Commission blocked the proposed joint venture of ThyssenKrupp and Tata Steel over concerns that it would reduce competition in the European steel market. *See* Press Release, European Commission,

**The Conspiracy – La Cosa Nostra Chat**

36.     For at least eight years, from 2015 to 2022, Defendants exploited their dominant market share and acted as a cartel to: (1) fix the prices of Rebar sold in Puerto Rico and elsewhere, (2) reduce the output of Rebar sold in Puerto Rico and elsewhere; and (3) allocate customers and market share of Rebar.

37.     Defendants carried out the conspiracy through secretive communications including phone calls, in-person meetings, and messages wherein Defendants orchestrated their horizontal conspiracy.

38.     In these communications, Defendants dubbed themselves "La Cosa Nostra" of the steel industry in Puerto Rico and coordinated on Rebar prices, price increases, and reducing output of Rebar.

39.     During the Class Period, Defendants exchanged numerous communications, and/or had meetings, in furtherance of the conspiracy.

---

*Mergers: Commission prohibits proposed merger between Tata Steel and ThyssenKrupp,* available at https://ec.europa.eu/commission/presscorner/detail/en/ip_19_2948.

ThyssenKrupp has also been investigated by the Bundeskartellamt (Germany's Federal Cartel Office) on numerous occasions for engaging in anticompetitive practices. In 2012, Bundeskartellamt fined ThyssenKrupp over €100 million for its role in a price-fixing cartel related to the supply of rails and other steel products for the German railway system. *See* Press Release, Bundeskartellamt, *Bundeskartellamt imposes first fines in rail case,* May 7, 2012, available at https://www.bundeskartellamt.de/SharedDocs/Meldung/EN/Pressemitteilungen/2012/05_07_2012_Schi enenkartell.html. In 2019, the Bundeskartellamt fined ThyssenKrupp €370 million for its part in coordinating with competitors on certain surcharges for steel plates in Germany. *See* Press Release, Bundeskartellamt, *Steel manufacturers fined approx. 646 million euros for agreeing on prices of quarto plates,* December 12, 2019, available at https://www.bundeskartellamt.de/SharedDocs/Meldung/EN/Pressemitteilungen/2019/12_12_2019_Quar tobleche.html.

40.     Below are excerpts of several communications among co-conspirators regarding the conspiracy:[20]

    a.  On or about August 20, 2015:

        **Aponte**: what price do I put [rebar]?

        **Sola-Colon**: 25.50?

    b.  On or about August 10, 2017:

        **Sola-Colon**: Good afternoon. The prices of rebar have kept rising internationally and the replacement costs are already over $27.50 per quintal. Starting next Monday, we'll start setting firm prices over $28.00 quintal. Please send this message to your clients so your clients can take advantage of the current prices until tomorrow.

        **Sola-Colon**: Message to the salesmen.

        **Aponte**: Perfect. Tomorrow, without fail, I will send it out to them so that both of us are on the same page. I just arrived in Mayaguez

        **Aponte**: Bro, that $28.00 is delivered.

        **Sola-Colon**: Yes, that is the price we are looking for

    c.  On or about September 13, 2017:

        **Aponte**: Listen, I want to ask you, are we going $28.75? Because the cost today is $27.00 for 1,000.

        **Aponte**: I want to start laying the groundwork to buy next week.

        **Sola-Colon**: Most of our orders are between 28.25

---

[20] The excerpts below are detailed in the criminal proceedings against Aponte and Sola-Colon (See USA v. Aponte-Tolentino, Case No. 3:24-cr-00261, ECF No. 3, at 5-8 (D. P.R. 2024); USA v. Sola-Colon, Case No. 3:24-cr-00331, ECF No. 2, at 5-8 (D. P.R. 2024)), and are translated from the original Spanish to English.

and 28.95. Every now and then we toss out a 27.95, but today [Fransico García-Alonso[21]] sold a platform to a client at 26.95.

**Aponte:** Umm, tomorrow after 12:00, I will raise without fail to $28.95cwt same as you. We have sold at $27.95cwt.

d.  On or about December 20, 2017:

**Aponte:** [a picture of a sticky note with handwritten prices for Rebar being sold by Aceros and SSS]

**Aponte:** confirm

**Sola-Colon:** received

...

**Sola-Colon:** [to CBM sales employees]: New [Aceros] rebar prices set by [Aponte] in [Aceros] and [SSS] due to shortage.

**Sola-Colon:** This is due to shortage in order to control demand

**Sola-Colon:** [to CBM sales employee], we need to react early tomorrow

e.  On or about June 15, 2018:

**Aponte:** Bro, at what price should we come out on Monday?

**Aponte:** Rebar.

**Sola-Colon:** I am staying steady at 48.95.

**Aponte:** Ok, then, we will go there.

**Aponte:** How much did rebar go up?

**Sola-Colon:** About .50qq

**Sola-Colon:** I am looking to earn about 20%.

---

[21] Francisco García-Alonso is the former President and owner of SSS and father of Defendant Garcia. Francisco García-Alonso passed away in 2022, leaving his son, Defendant Garcia, the company.

f.  On or about July 28, 2020:

> **Aponte:** Umm, the Sign asks you if it's right to raise the price of rebar right now. We will talk about the rest on the phone.
>
> **Sola-Colon:** It is not a bad idea.
>
> **Aponte:** I will call you soon.

g.  On or about October 27, 2020:

> **Aponte to Garcia:** Look you are hurting the market to $30.50cwt when you can sell it at $32.50cwt. The boys want rebar prices to be raised so they can sell the street.

h.  On or about November 9, 2020:

> **Aponte:** What prices should we be at now?
>
> **Sola-Colon:** I am at 32.95 per platform and 33.95 base
>
> **Aponte:** Then fuck it, let's go up there.
>
> **Aponte:** Profit time.

i.  On or about December 1, 2020:

> **Aponte:** The position is the following: Platform $33.95, 10 bundles $34.50, Fewer than 10 bundles: $34.95
>
> **Aponte:** The question is are we on the same page?
>
> **Sola-Colon:** Yes, that is what I am doing.

j.  On or about January 15, 2021:

> **Aponte:** [sends screenshot of message from Aponte to Aceros sales team]
>
> **Aponte:** $43.50cwt $42.50cwt per pack Starting now, as always, there are exception if there is rebar available
>
> **Aponte:** You received it.

> **Sola-Colon:** Yess
>
> **Sola-Colon:** I am going to go up little by little

k.  On or about February 15, 2022:

> **Aponte:** Look, this shit is going up. I'm thinking of going up to $51.95cwt
>
> **Sola-Colon:** I agree.

l.  On or about March 3, 2022:

> **Aponte:** IMPORTANT ... I repeat one of the largest producers of billets in the world is Ukraine. We are working towards finding other sources of the supply. Now while the axe comes and goes, we will restrict it. The price for pick up is $54.00qq. Delivery is $54.74qq, subject to availability, credit verification. 10 bundles or fewer is a safety measure in the face of uncertainty. Remember that, just as the situation changed from Friday until today, it could change again tomorrow. The freight went up 17% since August. We are dealing with that. The cost has gone up 8%. I need your protection and solidarity on this matter.
>
> **Garcia:** Was that for your sellers?
>
> **Garcia:** I am not selling more than 15 bundles
>
> **Garcia:** Right now
>
> **Aponte:** Exactly.
>
> **Garcia:** On Monday, I cut to 10.
>
> **Aponte:** In front of uncertainty we have to be careful.
>
> **Garcia:** And I will raise the price like you.

m.  On or about August 8, 2022:

> **Aponte to Garcia:** Do not lower rebar anymore. Please go with the same if you want and let the client decide.

41.    These messages, and others exchanged from about January 2015 until December 2022, are direct evidence of Defendants' long running conspiracy to fix supracompetitive prices for Rebar in Puerto Rico and elsewhere.

42.    The illegal conduct, as evidenced above, was orchestrated by high-level executives at ThyssenKrupp, Aceros, CBM, CB and SSS, including Aponte and Sola-Colon, who have both already pled guilty to price fixing charges as detailed below.

### Criminal Investigations & Proceedings

43.    On August 8, 2024, Aponte entered into a plea agreement with the United States Department of Justice ("DOJ") admitting to fixing the price of Rebar with would-be competitors, impacting more than $100 million in his company's sales.[22]

44.    On August 30, 2024, Sola-Colon entered into a plea agreement with DOJ admitting to price fixing Rebar distributed by his companies.[23]

45.    The aforementioned plea agreements explicitly detail multiple meetings, discussions, and communications where pricing strategies were agreed upon, and coordinated efforts were made to ensure adherence to the agreed-upon inflated prices. This is direct evidence that the Defendants knowingly and intentionally engaged in the conspiracy to fix prices for Rebar in violation of federal and state antitrust laws.

46.    The explicit admissions by Aponte and Sola-Colon in the plea agreements provide clear and convincing evidence of price-fixing and market manipulation by the Defendants.

47.    The admissions also show that Defendants concealed their illegal conduct through the

---

[22] *See USA v. Aponte-Tolentino*, Case No. 3:24-cr-00261, ECF No. 6 (D. P.R. 2024).

[23] *See USA v. Sola-Colon*, Case No. 3:24-cr-00331, ECF No. 4 (D. P.R. 2024).

use of encrypted messages, coded language, and off-the-books meetings to avoid detection by law enforcement and to maintain the effectiveness of their price- fixing scheme over the course of several years.

## ANTITRUST INJURY

48.    Defendants' unlawful conduct, alleged herein, had the following effects, among others:

     a.    Competition in the market for Rebar, including price competition, has been unlawfully restrained and suppressed;

     b.    Prices paid by purchasers of Rebar have been unlawfully fixed, raised, maintained and/or stabilized at supracompetitive levels; and

     c.    Purchasers of Rebar were deprived of the benefit of free and open competition.

49.    As a result of the Defendants' anticompetitive conduct, Plaintiff and Class Members paid more for Rebar than they would have paid in the absence of such conduct, and have sustained injury in the form of substantial damages to their business.

## CLASS ACTION ALLEGATIONS

50.    Pursuant to Federal Rules of Civil Procedure 23(a), b(2), and b(3), Plaintiff brings this action on behalf of themselves and the following class:

All persons and entities who purchased Rebar from the Defendants during the period January 2015-December 2022 at artificially inflated prices as a result of the Defendants' illegal price-fixing conspiracy.

Excluded from Class are Defendants, including any entity or division in which any Defendant has a controlling interest, as well as Defendants' joint ventures, subsidiaries, affiliates, assigns, and successors.

51.    Defendants have enjoyed ill-gotten gains from the sales of Rebar at the expense of Class Members, who suffered damage to their property and businesses by having no choice but to purchase Rebar at unlawfully and artificially elevated prices as a direct result of Defendants'

price-fixing conspiracy. Such damages apply to all Class Members.

52.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy:

a.  Numerosity: Joinder of all Class Members is impracticable. Upon information and belief, there are at least over 100 victims of this price fixing conspiracy[24] and likely many hundreds or thousands more entities in Puerto Rico and elsewhere that were forced to pay artificially inflated, anticompetitive prices for Rebar. Thus, the numerosity element for class certification is met.

b.  Commonality: Questions of law and fact are common to all members of the Class. The common questions of law and fact include, but are not limited to: (1) whether Defendants conspired to fix prices for Rebar; (2) whether the price of Rebar was inflated as a result of Defendants' conduct; (3) whether Defendants violated Section 1 of the Sherman Act; (4) whether Defendants violated Puerto Rico state law; (5) whether and to what extent Defendants' conduct caused antitrust injury to Plaintiff and Class Members; and (6) the appropriate measure of damages sustained by Plaintiff and Class Members. Specifically, Defendants' illegal price-fixing scheme was directed at all Class Members and had a common, adverse effect on all purchasers of Rebar. Each Class Member shares

---

[24] See *USA v. Sola-Colon*, Case No. 3:24-cr-00331, ECF No. 10, 10-1 (D. P.R. 2024) (Notice filed by the United States of America, listing at least 107 companies as direct victims of the conspiracy); see also ECF No. 9 (Order granting Government's Consented-To Motion for Alternate Victim Identification and Notification Procedures, stating that government need not identify any victim who purchased less than $100,000 worth of rebar from Defendants).

the same needed remedy, *i.e.*, reimbursement for the inflated prices paid and lost money due to Defendants' anticompetitive activities. These common questions and others predominate over questions, if any, that affect only individual Class Members.

c. <u>Typicality</u>: Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff and the Class Members' claims have the same essential characteristics, arise from the same factual course of conduct, and are based on the same statutes, regulations, and legal theories. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members. Defendants' business practices, acts, and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendants' legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in complex antitrust class action litigation and have no conflicts.

e. <u>Ascertainability</u>: Each Class Member is readily ascertainable and the records for each Class Member should exist, including, specifically, within Defendants' own sales records and transactional data.

53.     Proceeding with a class action is superior to any other methods for fair and efficient

adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated purchasers of Rebar to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual Class Members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides comprehensive supervision by a single court with economies of scale.

54.    A class action is also superior because separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### FOR A HORIZONTAL PRICE-FIXING CONSPIRACY
### (15 U.S.C. § 1)

55.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

56.    Defendants entered into and engaged in an agreement, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

57.    Defendants are horizontal competitors in the market for Rebar and possess dominant positions in the Rebar market.

58.    Defendants entered into an agreement, combination or conspiracy to restrain

competition in the market for Rebar. In furtherance thereof, during the Class Period, Defendants entered into agreements not to compete in the sale of Rebar. Defendants directly communicated with each other and colluded to illegally fix, raise, maintain and/or stabilize the price of Rebar. Defendants' actions constitute *per se* violations of the Sherman Act. In any event, Defendants actions are unreasonable and unlawful restraints of trade. There is no procompetitive justification for Defendants' conduct.

59.    Defendants' challenged conduct was intended to and did reduce competition in the Rebar market.

60.    Defendants' conduct had a substantial effect on interstate and foreign commerce, as the conspiracy directly affected the prices paid by purchasers of Rebar throughout Puerto Rico and elsewhere.

61.    As a direct and proximate result of the agreement, combination or conspiracy to restrain competition Plaintiff and the Class sustained actual injury to their business and property.

62.    Plaintiff and the Class Members, as direct purchasers of Defendants' Rebar, are entitled to treble damages for the violations of the Sherman Act alleged herein, and such other relief as the Court deems proper.

## COUNT II

### VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### FOR A HORIZONTAL PRICE-FIXING CONSPIRACY
### (15 U.S.C. § 1)
### (INJUNCTIVE RELIEF)

63.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

64.    Defendants entered into and engaged in an agreement, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

65.    Defendants are horizontal competitors in the market for Rebar and possess dominant positions in the Rebar market.

66.    Defendants entered into an agreement, combination or conspiracy to restrain competition in  the market for Rebar. In furtherance thereof, during the Class Period, Defendants entered into agreements not to compete in the sale of Rebar. Defendants directly communicated with each other and colluded to illegally fix, raise, maintain and/or stabilize the price of Rebar. Defendants' actions constitute *per se* violations of the Sherman Act. In any event, Defendants actions are unreasonable and unlawful restraints of trade. There is no procompetitive justification for Defendants' conduct.

67.    Defendants' challenged conduct was intended to and did reduce competition in the Rebar market.

68.    Defendants' conduct had a substantial effect on interstate and foreign commerce, as the conspiracy directly affected the prices paid by purchasers of Rebar throughout Puerto Rico and elsewhere.

69.    As a direct and proximate result of the agreement, combination or conspiracy to restrain competition Plaintiff and the Class sustained actual injury to their business and property.

70.    Plaintiffs and the Class have no adequate remedy at law and will suffer irreparable injury unless Defendants are enjoined from continuing their unlawful conduct. Accordingly, Plaintiffs and Class Members are entitled to injunctive relief against Defendants.

### COUNT III

### VIOLATION OF PUERTO RICO ANTIMONOPOLY ACT
### (10 .P.R.A. § 257 ET SEQ)

71.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

72.    Defendants entered into and engaged in an agreement, combination or conspiracy in restraint of trade in violation of Puerto Rico Antimonopoly Act of 1964. 10 L.P.R.A. § 257 *et seq*.

73.    Defendants are horizontal competitors in the market for Rebar and possessing dominant positions in the market for Rebar.

74.    Defendants entered into an agreement, combination or conspiracy to restrain competition in  the market for Rebar. In furtherance thereof, during the Class Period, Defendants entered into agreements not to compete in the sale of Rebar. Defendants directly communicated with each other and colluded to illegally fix, raise, maintain and/or stabilize the price of Rebar. Defendants actions are unreasonable and unlawful restraints of trade.

75.    Defendants' challenged conduct was intended to and did reduce competition in the Rebar market.

76.    As a direct and proximate result of the agreement, combination or conspiracy to restrain competition Plaintiff and the Class sustained actual injury to their business and property.

77.    Accordingly, Plaintiffs and Class Members seek all relief available under Puerto Rico Antimonopoly Act of 1964. 10 L.P.R.A. § 257 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor, and against Defendants and order the following relief:

a.    Certification of the action as a Class Action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representative and their counsel of record as Class Counsel;

b.    Declaring that the unlawful horizontal agreement alleged in Counts I-II be

adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

c. Declaring that the unlawful horizontal agreement alleged in Count III be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of the Puerto Rico Antimonopoly Act of 1964.

d. Permanent injunctive relief which enjoins Defendants, from, in any manner, continuing, maintaining or renewing the combination or conspiracy alleged herein, or from engaging in any other combination or conspiracy having similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and from otherwise violating the antitrust laws by entering into and carrying out their illegal agreements, and requires them to take affirmative steps to dissipate the effects of the violation;

e. Awarding damages for all damages arising from Defendants' unlawful conspiracy in restraint of trade as alleged herein, as provided under the Sherman Act and Puerto Rico Antimonopoly Act, and holding Defendants jointly and severally liable for all damages;

f. Declaring that Plaintiff and the Class recover treble their damages as caused by the conspiracy alleged herein, as provided by law, and that judgment in favor of Plaintiffs and the Class be entered against Defendants in that amount;

g. Awarding Plaintiffs and Class Members prejudgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the complaint in this action;

h. Ordering that Plaintiffs and Class Members recover their costs of this suit,

including reasonable attorneys' fees and costs, as provided by law; and

i.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

78.    Trial by jury is demanded on all issues so triable.


Dated: October 25, 2024                                 */s/ Luis V. Almeida-Olivieri*

Luis V. Almeida-Olivieri (PR Bar # 308307)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
1311 Ponce De Leon Avenue
San Juan, Puerto Rico 00907
(866) 252-0878
lalmeida@milberg.com


Peggy J. Wedgworth*
Elizabeth McKenna*
Michael Acciavatti*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
(212) 594-5300
pwedgworth@milberg.com
emckenna@milberg.com
macciavatti@milberg.com
*\* Pro Hac Vice Forthcoming*